# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1985

_____

|  |  |  |
|---|---|---|
| Missouri Department of Social Services, | * * * * | |
| Appellant, | * * | Appeal from the United States District Court for the |
| v. | * * | Eastern District of Missouri. |
| Michael O. Leavitt, as Secretary of the United States Department of Health and Human Services, | * * * * * | |
| Appellee. | * | |

_____

Submitted: November 15, 2005
Filed: June 2, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

The Missouri Department of Social Services (DSS) appeals the order of the district court,[1] granting summary judgment to the Secretary of the Department of Health and Human Services (DHHS). We affirm.

---

[1]The Honorable Thomas C. Mummert, III, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties. *See* 28 U.S.C. § 636(c); *see also* Fed. R. Civ. P. 73.

I.

DSS sought reimbursement under Title IV-E of the Social Security Act for services performed by state juvenile officers. *See* Federal Payments for Foster Care and Adoption Assistance, 42 U.S.C. §§ 670-679b. In Missouri, juvenile officers are judicial employees, who are supervised by the juvenile court or circuit court judges. Mo. Rev. Stat. § 211.351. They work in the state's child-protection system and remove children from homes, file petitions in juvenile court, and help develop and manage case plans as part of a family support team that includes DSS. *See id.*; Mo. Rev. Stat. §§ 207.020.1(17), 211.401.

Under Title IV-E, states may receive federal financial participation "for the provision of child placement services and for the proper and efficient administration" of a state plan for foster care and adoption assistance. 42 U.S.C. § 674(a)(3). For a state to receive payments under this program, it must designate a single state agency (SSA) that will "administer, or supervise the administration of," the state plan. 42 U.S.C. § 671(a)(2); 45 C.F.R. §§ 205.100(a)(1)(i), 1355.20(p)(4). States may receive federal financial assistance under Title IV-E for program-related services performed by other state agencies under certain circumstances: The SSA must have a written agreement with the other agency that details the services that the other agency will provide and how it will bill for those services, 45 C.F.R. § 95.507(b)(6), and the services cannot be performed by an agency that reviews the administrative decisions of the SSA or otherwise substitutes its judgment for that of the SSA, *see* 45 C.F.R. § 205.100(b)(3).

Missouri has designated DSS as the state agency responsible for administering its IV-E plan. Believing that it could secure federal funds for some of the administrative activities of juvenile officers, DSS entered into an agreement with the Office of the State Courts Administrator (OSCA), a judicial office that provides Missouri courts with administrative and technical support. Under that agreement, OSCA had each juvenile office participate in random-moment time studies to allow

DSS to track what portion of the juvenile officers' time was eligible for reimbursement. The agreement also provided that if a juvenile office was found to have violated a state or federal regulation, OSCA would notify the juvenile office of the violation, follow-up to determine whether the office took corrective action, and then report back to DSS. If DSS determined that the juvenile office was still not complying, it would not seek federal reimbursement for the office's activities until the problem was resolved.

Shortly after the time studies were completed, DSS submitted claims for juvenile officers' services to the Administration for Children and Family Services (ACF) of the DHHS. The ACF denied the claims, and DSS appealed to the Departmental Appeals Board (DAB). Before the DAB, DSS contended that the agreement that it entered into with OSCA allowed it to claim federal financial participation under 42 U.S.C. § 672(a)(2)(B); under that section, state agencies other than DSS may provide for the placement and care of foster children and DSS may claim federal financial participation for those activities. While we note that the form of § 672(a)(2)(B) has recently changed, Deficit Reduction Act of 2005, Pub. L. No. 109-171, 120 Stat. 4, 151 (Feb. 8, 2006), those changes do not affect our analysis. Alternatively, DSS argued for the first time that it could receive IV-E funding for the juvenile officers' program-related activities because the OSCA agreement could be seen as a contract for removal and pre-placement services. Such services, DSS argued, were eligible for reimbursement under § 671(a)(2).

The DAB upheld the ACF's decision denying the claims. It concluded that DSS could not obtain federal assistance for the activities of OSCA or the juvenile officers under § 672 since neither OSCA nor the officers were responsible for the care and placement of IV-E children in Missouri. The DAB also rejected DSS's reliance on § 671, finding that even if the juvenile officers' activities would otherwise have been eligible for federal financial participation as removal and pre-placement services, DSS did not supervise the juvenile officers' actions and the OSCA

-3-

agreement did not give DSS any such oversight. The DAB determined that because the SSA must administer or supervise all aspects of the state's IV-E plan, the juvenile officers' actions were not reimbursable. *See* 42 U.S.C. § 671(a)(2). The district court, after determining that the DAB's findings were supported by the record and that the decision as a whole was not arbitrary or capricious, granted summary judgment to the Secretary of DHHS.

## II.

We review the district court's grant of summary judgment *de novo*, applying the same standards used by the district court. *Gipson v. INS*, 284 F.3d 913, 916 (8th Cir. 2002). The parties agree that the DAB's decision to disallow Missouri's claims will be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

We first address DSS's contention that it is entitled to funding for the juvenile officers' program-related activities under § 672(a)(2). Under § 672(a)(2)(B), the SSA may seek reimbursement for the cost of child care and placement services for foster children performed by other state agencies. The costs eligible for reimbursement include administrative costs incurred in placing a child, 45 C.F.R. § 1356.60(c)(2)(iii), as well as "closely related" activities, Missouri Dep't of Soc. Servs., DAB No. 844, 1987 HHSDAB Lexis 784, *33 (March 2, 1987). DSS continues to argue that the juvenile officers were responsible for the placement and care of children; it also contends that since removal is a necessary precondition to placing a child in foster care, removal is "closely related" to placement and is thus eligible for reimbursement.

But regardless of whether removal is closely related to placement, the state cannot obtain federal assistance for closely-related activities of an agency other than DSS under § 672(a)(2), unless that agency is also responsible for the actual placement

-4-

and care of children.  *See id.*; Maryland Dep't of Human Res., DAB No. 1225, 1991 HHSDAB Lexis 1018, *2, *12-13 (Feb. 7, 1991).  In this case, the DAB determined that it is DSS that has ultimate control over the placement and care of children, not OSCA or the juvenile officers.  The record supports this determination.  Evidence presented to the DAB tended to show that although juvenile officers put children in temporary protective custody, it is DSS that decides where those children are ultimately placed.  In addition, the DAB heard evidence that juvenile courts vest legal custody of removed children in DSS, not OSCA or the juvenile officers.  In fact, the agreement between DSS and OSCA provides for that.  Thus, the DAB's determination that Missouri could not claim federal financial assistance for juvenile officer activities under § 672 was supported by the record and not arbitrary or capricious.

DSS also contends that having judicial employees in charge of removal and pre-placement services, rather than using employees supervised by the designated SSA, does not undermine the policy behind the SSA requirement of § 671(a)(2). Relying on a case interpreting analogous language from the Medicaid Act, *see* 42 U.S.C. § 1396a(a)(5), DSS contends that the SSA requirement in § 671(a)(2) exists to avoid a diversity of operating standards within the state and to facilitate federal oversight of the state program.  *Cf. Hillburn ex rel. Hillburn v. Maher*, 795 F.2d 252, 261 (2d Cir. 1986), *cert. denied*, 479 U.S. 1046 (1987).  The Missouri scheme meets these goals, says DSS, even though judicial employees maintain ultimate authority about when to remove children from their homes.

But to obtain funding, Missouri must comply with the controlling statutes and regulations.  For a state to be eligible for IV-E payments, it must put together a state plan that is approved by the Secretary of DHHS.  42 U.S.C. § 671(a).  In that plan, the state must designate an SSA that shall either "administer, or supervise the administration of" the state's IV-E program.  42 U.S.C. § 671(a)(2); *see also* 45 C.F.R. § 205.100(a)(1).  That SSA may not delegate to other agencies the "administrative discretion in the administration or supervision of the plan including

the issuance of policies, rules, and regulations on program matters."  45 C.F.R. § 205.100(b)(1).  While other state agencies may perform program-related services, they cannot "have authority to review, change, or disapprove any administrative decision of the SSA, or otherwise substitute their judgment for that of the agency." 45 C.F.R. § 205.100(b)(3).

Under Missouri state law, however, DSS does not supervise the juvenile officers' program-related activities; rather, they are supervised only by other juvenile officers and the local juvenile court or circuit judges.  *See* Mo. Rev. Stat. § 211.351. Juvenile officers have the discretion to file removal petitions in juvenile court, and they may refuse DSS removal requests; Missouri law specifically forbids a DSS employee from "acting upon his own, [to] remove a child."  Mo. Rev. Stat. § 210.125.3.  And nothing in the agreement between DSS and OSCA gave DSS any supervisory authority over the juvenile officers' operations.  Even if having juvenile officers make the removal decision does not frustrate the purposes of the SSA requirement, it is nonetheless a requirement with which the state must comply. Because DSS cannot supervise the juvenile officers' removal and pre-placement activities, the DAB's decision that those actions were not reimbursable was not arbitrary or capricious and was supported by substantial evidence on the record.

III.

For the reasons stated above, we affirm the district court's grant of summary judgment to the Secretary of DHHS.

_____